2012 AUG 23 PM 4:33

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **I N D I C T M E N T** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) CASE NO. | **1:12CR391** |
| | ) | Title 18, United States Code, |
| DAVID L. TARTT, | ) | Sections 1344 and 2 |
| LIONEL D. RUTHERFORD, | ) | |
| TERRANCE R. WALKER, | ) | **JUDGE GAUGHAN** |
| YVONNE M. TURNER, | ) | |
| MICHAEL L. POLLARD, | ) | |
| CHRISTOPHER RICO, | ) | |
| KELLY WALKER, | ) | |
| ROBERT J. MIDDLEBROOKS, | ) | |
| DARNELL EVANS, and | ) | |
| NICOY WILLIAMS, | ) | |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

The Grand Jury charges:

1. At all times material to this Indictment, PNC Bank, Key Bank, First Merit Bank, Charter One Bank, Fifth Third Bank and Dollar Bank were each financial institutions as defined

in Title 18, United States Code, Section 20, the deposits of which were insured by the Federal Deposit Insurance Corporation (FDIC).

2. At all times material to this Indictment NICOY WILLIAMS was employed as an Assistant Manager by Dollar Bank at a branch located in Maple Heights, Ohio, within the Northern District of Ohio, Eastern Division.

3. At all times material to this Indictment TERRANCE R. WALKER was employed as a point-of-sale credit service manager for several companies, including representing Total Merchant Services.

## COUNT 1

The Grand Jury further charges:

4. The allegations contained in paragraphs 1 through 3, inclusive, are incorporated by reference as if specifically re-written herein.

5. Between on or about January 13, 2012, and on or about January 27, 2012, in the Northern District of Ohio, Eastern Division, DAVID L. TARTT, LIONEL D. RUTHERFORD, TERRANCE R. WALKER, YVONNE M. TURNER and ROBERT J. MIDDLEBROOKS knowingly executed, attempted to execute, and knowingly aided and abetted the execution and attempted execution of a scheme and artifice to defraud PNC Bank, the deposits of which were insured by the FDIC, and to obtain money, funds, credits and other property owned by and under the custody and control of PNC Bank, by means of false and fraudulent pretenses, representations and promises.

6. It was part of the scheme and artifice that prior to on or about January 13, 2012, TERRANCE R. WALKER fraudulently provided financial information (PNC Bank account number, tax identification number, voided checks, dates of birth and Social Security Account Numbers of business owners) concerning Superior Restaurant, a point-of-sale services customer of TERRANCE R. WALKER's to DAVID L. TARTT and LIONEL D. RUTHERFORD in exchange for cash payments. TERRANCE R. WALKER knew and had reason to know that DAVID L. TARTT and LIONEL D. RUTHERFORD intended to use this personal and financial information in connection with a scheme to fraudulently obtain funds from PNC Bank.

7. It was further part of the scheme and artifice that DAVID L. TARTT and LIONEL D. RUTHERFORD utilized the fraudulently obtained financial information concerning Superior Restaurant to produce, manufacture or otherwise obtain counterfeit checks which purported to be drawn on the PNC Bank account maintained by Superior Restaurant, and recruited other individuals, including YVONNE M. TURNER and ROBERT J. MIDDLEBROOKS, to negotiate or cash said checks at various branches of PNC Bank.

8. It was further part of the scheme and artifice that on or about January 18, 2012, an unknown individual contacted the PNC Bank call service center and changed the contact telephone number for the Superior Restaurant account to 440-241-0944 without the authorization or knowledge of the actual account holder.

9. It was further part of the scheme and artifice that between on or about January 19, 2012, and on or about January 27, 2012, at various PNC Bank branches located in the Northern District of Ohio, Eastern Division, YVONNE M. TURNER knowingly negotiated and cashed, and attempted to negotiate and cash, nine (9) counterfeit and forged checks which were

purportedly drawn on the Superior Restaurant account maintained at PNC Bank, bearing check numbers 11720, 11721, 11722, 11724, 11744, 11750, 11753, 11757 and 11743, totaling $69,100. The proceeds from these counterfeit checks were split between DAVID L. TARTT, LIONEL D. RUTHERFORD and YVONNE M. TURNER.

10. It was further part of the scheme and artifice that on or about January 19, 2012, ROBERT J. MIDDLEBROOKS negotiated a counterfeited and forged check, number 11707, which was purportedly drawn on the Superior Restaurant account at PNC Bank, with a face amount of $9,400. ROBERT J. MIDDLEBROOKS negotiated this check at a U.S. Bank branch in the Greater Cleveland area. The proceeds were later split between DAVID L. TARTT, LIONEL D. RUTHERFORD and ROBERT J. MIDDLEBROOKS.

11. As a result, PNC Bank suffered losses of approximately $69,100, in violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT 2

The Grand Jury further charges:

12. The allegations contained in paragraphs 1 through 3, inclusive, are incorporated by reference as if specifically re-written herein.

13. Between on or about January 9, 2012, and on or about March 22, 2012, in the Northern District of Ohio, Eastern Division, DAVID L. TARTT, LIONEL D. RUTHERFORD, NICOY WILLIAMS, MICHAEL L. POLLARD, KELLY WALKER, and others presently unknown to the Grand Jury, knowingly executed, attempted to execute and knowingly aided and abetted the execution and attempted execution of a scheme and artifice to defraud Dollar Bank,

the deposits of which were insured by the FDIC, and to obtain money, funds, credits and other property owned by and under the custody and control of Dollar Bank, by means of false and fraudulent pretenses, representations and promises.

14. It was part of the scheme and artifice that LIONEL D. RUTHERFORD befriended and developed a personal relationship with NICOY WILLIAMS for the purpose of obtaining personal and financial information concerning Dollar Bank customers to which NICOY WILLIAMS had access by virtue of her position with Dollar Bank.

15. It was further part of the scheme and artifice that beginning as early as January 2012, and continuing until on or about March 22, 2012, LIONEL D. RUTHERFORD requested that NICOY WILLIAMS access Dollar Bank's records to search for and retrieve personal and financial information concerning Dollar Bank's accounts and customers. During this time period, Dollar Bank's records reflect that NICOY WILLIAMS systematically reviewed Dollar Bank's computerized account records on different occasions looking at hundreds of customers' records, selecting one or more accounts on each occasion. Dollar Bank's records further reflect that fraudulent withdrawals or other transactions were conducted by NICOY WILLIAMS, shortly after accessing the account information.

16. It was further part of the scheme and artifice that on or about January 9, 2012, an unknown individual contacted the Dollar Bank call center and changed the contact telephone number for an account maintained in the name of See Bee Distributing to 440-313-8301, without the knowledge or authorization of the true account holder. Between January 9, 2012, and January 19, 2012, there were a number of calls to the Dollar Bank call center attempting to access account information for the See Bee Distributing account.

17. It was further part of the scheme and artifice that between on or about January 13, 2012, and on or about January 19, 2012, MICHAEL L. POLLARD entered various Dollar Bank branches in the Northern District of Ohio, Eastern Division, and negotiated and attempted to negotiate six (6) counterfeited and forged checks with face amounts totaling approximately $36,900, said checks purporting to be drawn on the See Bee Distributing account at Dollar Bank. MICHAEL L. POLLARD successfully negotiated five (5) of the counterfeit checks and received approximately $31,400 in cash which was subsequently split between MICHAEL L. POLLARD, DAVID L. TARTT and LIONEL D. RUTHERFORD.

18. It was further part of the scheme and artifice that on or about January 13, 2012, and on or about January 18, 2012, two counterfeit checks with face amounts totaling $15,200, purportedly drawn on a Chase Bank account maintained by Oriana House, were deposited into the See Bee Distributing account at Dollar Bank branches located in the Greater Cleveland area. Both checks were later returned as fraudulent.

19. It was further part of the scheme and artifice that on or about February 9, 2012, NICOY WILLIAMS reviewed at least 22 customers' bank records, and selected an account maintained by Marbelle Industries, Inc. Dollar Bank records reflect that subsequently, on February 24, 2012, an individual whose identity is presently unknown to the Grand Jury, entered the Maple Heights, Ohio, branch of Dollar Bank, presented a counterfeit Ohio drivers license in the name of "OM" (an authorized signatory on the Marbelle Industries, Inc. account), and fraudulently withdrew $9,500, in cash from Marbelle Industries, Inc.'s savings account.

20. It was further part of the scheme and artifice that on or about February 29, 2012, two additional fraudulent withdrawals of cash from the Marbelle Industries, Inc. account totaling approximately $15,800, were conducted at Dollar Bank branches in the Northern District of Ohio, Eastern Division, by one or more individuals whose identities are presently unknown to the Grand Jury.

21. It was further part of the scheme and artifice that on or about February 10, 2012, NICOY WILLIAMS again reviewed Dollar Bank's customer account information for at least 50 customers, and selected an account maintained in the name of "DS," an individual who resides in Pennsylvania. Dollar Bank's records further reflect that on or about February 17, 2012, KELLY WALKER, entered the Maple Heights, Ohio, branch of Dollar Bank and cashed a counterfeited and forged check in the amount of $4,500, purportedly drawn on the account of "DS." Dollar Bank's records further reflect that shortly after cashing said check, KELLY WALKER entered the Beachwood, Ohio, branch of Dollar Bank and deposited a counterfeited and forged check in the amount of $8,200, into the account of "DS."

22. It was further part of the scheme and artifice that on or about February 21, 2012, and on or about February 22, 2012, NICOY WILLIAMS again reviewed Dollar Bank's customer account information and selected a dormant account maintained in the name of "BG," an individual residing in Ohio. Several hours later, an individual whose identity is presently unknown to the Grand Jury, entered the University Heights, Ohio, branch of Dollar Bank and deposited a counterfeited and forged check in the amount of $4,990.23, into the dormant account of "BG." The check was determined to be fraudulent and no actual loss was incurred by Dollar Bank as a result.

23. It was further part of the scheme and artifice that on or about March 22, 2012, NICOY WILLIAMS again reviewed Dollar Bank's customer account information and selected an account maintained in the name of "GB," an individual residing in Ohio. Within minutes of NICOY WILLIAMS' last access to GB's account information, NICOY WILLIAMS went behind the branch teller line and assisted an individual, whose identity is presently unknown to the Grand Jury, to process a $1,000 fraudulent cash withdrawal from GB's savings account.

24. As a result, Dollar Bank suffered losses in the approximate amount of $45,000, in violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT 3

The Grand Jury further charges:

25. The allegations contained in paragraphs 1 through 3, inclusive, are incorporated by reference as if specifically re-written herein.

26. Between on or about January 30, 2012, and on or about January 31, 2012, in the Northern District of Ohio, Eastern Division, and elsewhere, DAVID L. TARTT, LIONEL D. RUTHERFORD, TERRANCE R. WALKER, YVONNE M. TURNER, and others, whose identities are presently unknown to the Grand Jury, knowingly executed, attempted to execute and knowingly aided and abetted the execution and attempted execution of a scheme and artifice to defraud Fifth Third Bank, the deposits of which were insured by the FDIC, and to obtain money, funds, credits and other property owned by and under the custody and control of Fifth Third Bank, by means of false and fraudulent pretenses, representations and promises.

27. It was part of the scheme and artifice that in exchange for cash payments, TERRANCE R. WALKER fraudulently provided personal and financial information concerning the Oscar Giovanni Salon, a point-of-sale services customer of TERRANCE R. WALKER's to DAVID L. TARTT and LIONEL D. RUTHERFORD, knowing that the information would be used in connection with a scheme and artifice to defraud Fifth Third Bank or obtain money from the bank by false pretenses.

28. It was further part of the scheme and artifice that between on or about January 30, 2012, and on or about January 31, 2012, DAVID L. TARTT and LIONEL D. RUTHERFORD, produced, manufactured or otherwise obtained counterfeit checks which purported to be drawn on a Fifth Third Bank account maintained by the Oscar Giovanni Salon and recruited YVONNE M. TURNER, to negotiate said checks.

29. It was further part of the scheme and artifice that on or about January 30, 2012, and on or about January 31, 2012, YVONNE M. TURNER visited three (3) different Fifth Third Bank branches located in the Northern District of Ohio, Eastern Division, and negotiated three (3) counterfeited and forged checks purportedly drawn on said account, totaling $13,300. YVONNE M. TURNER received cash which was subsequently split between DAVID L. TARTT, LIONEL D. RUTHERFORD and YVONNE M. TURNER.

30. As a result, Fifth Third Bank suffered losses in the approximate amount of $13,300, in violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT 4

The Grand Jury further charges:

31.     The allegations contained in paragraphs 1 through 3, inclusive, are incorporated by reference as if specifically re-written herein.

32.     Between on or about December 3, 2011, and on or about December 15, 2011, in the Northern District of Ohio, Eastern Division, DAVID L. TARTT, LIONEL D. RUTHERFORD, TERRANCE R. WALKER, CHRISTOPHER RICO, DARNELL EVANS, and "CG," (an individual whose identity is known to the Grand Jury but not charged herein), knowingly executed, attempted to execute, and knowingly aided and abetted the execution and attempted execution of a scheme and artifice to defraud Charter One Bank, the deposits of which were insured by the FDIC, and to obtain money, funds, credits and other property owned by and under the custody and control of Charter One Bank, by means of false and fraudulent pretenses, representations and promises.

33.     It was part of the scheme and artifice that between in or about December 2011, and in or about May 2012, in exchange for cash payments, TERRANCE R. WALKER fraudulently provided personal and financial information pertaining to various businesses and individuals, including Axis Plumbing, Refractive Technologies, point-of-sale service customers of TERRANCE R. WALKER's, and information pertaining to "MQ," an individual, to DAVID L. TARTT and LIONEL D. RUTHERFORD, knowing that the information would be used in connection with a scheme to defraud Charter One Bank and to obtain funds from the bank under false pretenses.

34. It was further part of the scheme and artifice that on or about December 7, 2011, an individual whose identity is presently unknown to the Grand Jury entered a Charter One Bank branch located on Harvard Avenue, Cleveland, Ohio, and deposited a counterfeit check purportedly drawn on a PNC Bank account maintained by Kiddie Company Enrichment Center LTD with a face amount of $22,400, into a Charter One account maintained in the name of Axis Plumbing.

35. It was further part of the scheme and artifice that DAVID L. TARTT and LIONEL D. RUTHERFORD produced or otherwise obtained counterfeit checks which purported to be drawn on the Charter One Bank accounts maintained by Axis Plumbing and Refractive Technologies, and recruited "CG," and others to negotiate said checks at branches of Charter One Bank.

36. It was further part of the scheme and artifice that on or about December 8, 2011, "CG" negotiated a counterfeited and forged check purportedly drawn on the Charter One Bank account of Axis Plumbing having a face amount of $6,200, at a Charter One Branch located in Cleveland, Ohio, in the Northern District of Ohio, Eastern Division. The proceeds from the fraudulent check were split between DAVID L. TARTT, LIONEL D. RUTHERFORD, and "CG."

37. It was further part of the scheme and artifice that on or about December 15, 2011, "CG" negotiated a counterfeited and forged check purportedly drawn on the Charter One Bank account of Refractive Technologies, having a face amount of $5,000, at a Charter One branch located in Woodmere, Ohio. The proceeds from this check were split between "CG", DAVID L. TARTT and LIONEL D. RUTHERFORD.

38. It was further part of the scheme and artifice that in or about March 2012, DAVID L. TARTT recruited CHRISTOPHER RICO and DARNELL EVANS to conduct fraudulent financial transactions affecting Charter One Bank accounts.

39. It was further part of the scheme and artifice that between on or about May 19, 2012, and on or about May 25, 2012, DAVID L. TARTT provided fraudulently completed withdrawal slips to CHRISTOPHER RICO in order to withdraw cash from a Charter One Bank account maintained by "MQ," a Charter One Bank customer residing in Ohio. CHRISTOPHER RICO, using the fraudulently completed withdrawal slips, visited two Charter One Branches in the Greater Cleveland area on or about May 19, 2012, and fraudulently withdrew cash totaling $12,700, which was split with DAVID L. TARTT and LIONEL D. RUTHERFORD. On or about May 25, 2012, CHRISTOPHER RICO unsuccessfully attempted to withdraw an additional $9,200, from the "MQ" account, at which time CHRISTOPHER RICO was arrested.

40. It was further part of the scheme and artifice that on or about June 1, 2012, DARNELL EVANS visited a Charter One Bank branch in Rocky River, Ohio, and unsuccessfully attempted to withdraw $5,400, in cash from the Charter One account maintained by "MQ" using a fraudulent withdrawal slip.

41. As a result, Charter One Bank suffered losses in the approximate amount of $28,700, in violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT 5

The Grand Jury further charges:

42. The allegations contained in paragraphs 1 through 3, inclusive, are incorporated by reference as if specifically re-written herein.

43. Between on or about November 23, 2011, and on or about November 28, 2011, in the Northern District of Ohio, Eastern Division, DAVID L. TARTT, LIONEL D. RUTHERFORD, TERRANCE R. WALKER, and "CG," (an individual whose identity is known to the Grand Jury but not charged herein), knowingly executed and attempted to execute a scheme and artifice to defraud First Merit Bank, the deposits of which were then insured by the FDIC, and to obtain money, funds, credits and other property owned by and under the custody and control of First Merit Bank, by means of false and fraudulent pretenses, representations and promises.

44. It was part of the scheme and artifice that on or before November 23, 2011, in exchange for a cash payment, TERRANCE R. WALKER fraudulently provided personal and financial information pertaining to First Flooring and Tile, Inc., a point-of-sale services customer of TERRANCE R. WALKER's to DAVID L. TARTT and LIONEL D. RUTHERFORD, knowing that the information would be used in connection with a scheme to defraud First Merit Bank and to obtain funds from the bank under false pretenses.

45. It was part of the scheme and artifice that on or about November 23, 2011, an unknown individual contacted First Merit Bank's Customer Contact Center and fraudulently changed the telephone contact number for the account maintained in the name of First Flooring and Tile to 216-254-2373.

46. It was further part of the scheme and artifice that on or about November 23, 2011, "CG" unsuccessfully attempted to open an account at the North Olmsted Branch of First Merit Bank, located at 25775 Lorain Road, North Olmsted, Ohio, using a counterfeit check, bearing check number 62638 in the amount of $9,251.88, drawn on the account of First Flooring and Tile, as the opening deposit into the new account.

47. It was further part of the scheme and artifice that after First Merit Bank declined to open a new account for "CG," on November 23, 2011, "CG" cashed the counterfeit First Flooring and Tile check, bearing check number 62638 in the amount of $9,251.88. Unaware that the contact phone number for this account had been fraudulently changed, the teller conducting this transaction attempted to contact the account holder to verify the authenticity of the check. The imposter who answered the "new" phone number indicated that the check in question was legitimate, and "CG" received $9,251.88, in cash.

48. It was further part of the scheme and artifice that on or about November 25, 2011, "CG" entered the Westown Branch of First Merit Bank located at 10717 Lorain Road, Cleveland, Ohio, and negotiated a counterfeit check drawn on the First Merit Bank account of First Flooring and Tile, bearing check number 62646, in the amount of $7,100.00. "CG" purchased a cashier's check payable to himself in the amount of $3,090.00, and took the remaining $4,010.00, in cash. Later the same day, "CG" cashed the cashier's check at the Harvard Branch of First Merit Bank located at 7021 Harvard Avenue, Cleveland, Ohio.

49. It was further part of the scheme and artifice that on or about November 28, 2011, "CG" entered the North Olmsted Branch of First Merit Bank located at 25775 Lorain Road,

North Olmsted, Ohio, and negotiated a counterfeit check drawn on the First Flooring and Tile account, bearing check number 62649, in the amount of $7,200.00.

50. It was further part of the scheme and artifice that on or about November 28, 2011, "CG" entered the Cedar Center Branch of First Merit Bank located at 14100 Cedar Road, Cleveland, Ohio, and negotiated a counterfeit check drawn on the First Flooring and Tile account, bearing check number 62647, in the amount of $7,000.00.

51. The proceeds from the counterfeit checks purportedly drawn on the First Flooring and Tile account were subsequently split between "CG," DAVID L. TARTT and LIONEL D. RUTHERFORD.

52. As a result of the scheme and artifice, First Merit Bank has suffered actual losses totaling approximately $30,551.88, in violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT 6

The Grand Jury further charges:

53. The allegations in paragraphs 1 through 3, inclusive, are incorporated by reference as if specifically re-written herein.

54. Between on or about December 19, 2011, and on or about December 27, 2011, in the Northern District of Ohio, Eastern Division, DAVID L. TARTT, LIONEL D. RUTHERFORD, and TERRANCE R. WALKER, along with "CG," (an individual whose identity is known to the Grand Jury but not charged herein), knowingly executed and attempted to execute a scheme and artifice to defraud Key Bank, the deposits of which were then insured by

the FDIC, and to obtain money, funds, credits and other property owned by and under the custody and control of Key Bank, by means of false and fraudulent pretenses, representations and promises.

55. It was part of the scheme and artifice that on or before December 19, 2011, in exchange for a cash payment, TERRANCE R. WALKER fraudulently provided personal and financial information pertaining to E & R Fritz and C.T.V. Systems (d.b.a. Popeye's Famous Fried Chicken), point-of-sale service customers of TERRANCE R. WALKER's to DAVID L. TARTT and LIONEL D. RUTHERFORD, knowing that the information would be used in connection with a scheme to defraud Key Bank and to obtain funds from the bank under false pretenses.

56. It was part of the scheme and artifice that on or about December 19, 2011, an unknown individual contacted Key Bank's Business Banking call center and fraudulently changed the contact telephone number for the E & R Fritz account to 440-241-0944 without the knowledge or authorization of the true account holder.

57. It was further part of the scheme and artifice that on or about December 19, 2011, a counterfeit check in the amount of $15,000.00, was deposited into the E & R Fritz account at the Key Bank Branch located at 5703 Broadway Avenue, Cleveland, Ohio. The $15,000.00, check was purportedly drawn on a Charter One Bank account maintained in the name of Refractive Technologies, Inc., payable to E & R Fritz, and contained a forged endorsement.

58. It was further part of the scheme and artifice that on or about December 19, 2011, "CG" entered a Key Bank branch in Macedonia, Ohio, and cashed a counterfeit check

purportedly drawn on the E & R Fritz account, bearing check number 20696, in the amount of $7,000.00. The bank teller, unaware that the telephone contact had been fraudulently changed, called the fraudulent number in the customer profile to verify the legitimacy of the check before giving "CG" $7,000.00, in cash.

59. It was further part of the scheme and artifice that on or about December 20, 2011, "CG" entered a Key Bank branch located on Broadway Avenue in Cleveland, Ohio, and cashed a counterfeit check purportedly drawn on the E & R Fritz account, bearing check number 20698, in the amount of $6,500.00. The bank teller, unaware that the contact telephone number had been fraudulently changed, called the fraudulent number in the customer profile to verify the legitimacy of the check before giving "CG" $6,500.00, in cash.

60. On or about December 21, 2011, the owner of E & R Fritz reported three (3) fraudulent transactions on the business' account set forth above, and further reported that the telephone contact number in the customer profile for the account had been fraudulently changed without the knowledge or consent of the actual account holder.

61. It was further part of the scheme and artifice that on or prior to December 23, 2011, someone contacted the Key Bank Business Banking call center and fraudulently changed the telephone contact number a business account maintained by C.T.V. Systems (dba Popeye's Famous Fried Chicken). The contact telephone number was changed to 440-241-0944.

62. It was further part of the scheme and artifice that on or about December 23, 2011, "CG" entered a Key Bank branch located on Coventry Road in Cleveland Heights, Ohio, and attempted to cash a counterfeit check, bearing check number 17742, in the amount of $7,200.00, purportedly drawn on the business account maintained by C.T.V. Systems. Bank employees

attempted to verify the check by contacting the account holder, but were unable to contact the known true account holder since the telephone contact number had been recently changed. Cleveland Heights Police released "CG" as they were unable to confirm at that time that the check was fraudulent.

63. It was further part of the scheme and artifice that on or about December 23, 2011, "CG" entered a branch of Key Bank located in the Steelyard Commons Shopping Center, Cleveland, Ohio, and cashed a counterfeit check purportedly drawn on the Key Bank account of C.T.V. Systems, bearing check number 17736, in the amount of $7,100.00. "CG" received $7,100.00, in cash from the transaction.

64. It was further part of the scheme and artifice that on or about December 27, 2011, "CG" entered a Key Bank branch located in the Great Northern Shopping Center in North Olmsted, Ohio, and attempted to cash a counterfeit check purportedly drawn on the C.T.V. Systems account, bearing check number 17742, in the amount of $7,000.00. Bank personnel realizing that the telephone contact number for the account had recently been changed, called the police, who arrested "CG" after questioning him about the check.

65. Representatives of C.T.V. Systems subsequently confirmed that the checks in question were not legitimately issued by the company and that the telephone contact number for the account had been changed without their knowledge or consent.

66. The proceeds from the counterfeited and forged checks negotiated at Key Bank, totaling $20,600, were split between "CG", DAVID L. TARTT and LIONEL D. RUTHERFORD.

67. As a result of this scheme and artifice Key Bank experienced intended losses totaling approximately $49,800.00, and actual losses totaling approximately $20,600.00, in violation of Title 18, United States Code, Section 1344.

A TRUE BILL.

Original Document - - Signatures on file with the Clerk of Court, pursuant to the E-Government Act of 2002.